**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-02300-DDD-SBP

RUBESNE RESOURCES LLC, a Colorado Limited Liability Company,

Plaintiff,

v.

ACE PROPERTY AND CASUALTY INSURANCE COMPANY, a Foreign Corporation,

Defendant.

---

## ORDER ON PLAINTIFF'S MOTION TO COMPEL

---

**Susan Prose, United States Magistrate Judge**

This matter comes before the court on a motion to compel filed by Plaintiff Rubesne Resources LLC. ECF No. 57 ("Motion" or "Motion to Compel"). The Motion has been referred to the undersigned United States Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a). ECF No. 58. To assist the court in resolving the Motion, the undersigned ordered Defendant ACE Property and Casualty Company to submit for *in camera* review a group of documents ACE had withheld from production to Rubesne, which served as the impetus for the Motion. ECF No. 66. Following a careful examination of the briefing on the Motion, the documents withheld (*see* ECF No. 69, notation for conventionally-submitted material), and the applicable law, the Motion is now respectfully **DENIED**.

## BACKGROUND

The court fully incorporates here its extensive description of the factual and procedural

background of this litigation and assumes the reader's familiarity with that history. *See* May 7, 2026 Order on Defendant's Motion to Compel, ECF No. 67 at 1-9. Additional background information is provided here as necessary to refresh the reader's recollection and to provide context for the court's assessment of the current Motion, in which Rubesne seeks to uncover multiple documents referenced on privilege logs—including documents reflecting communications between ACE and South Metro Fire Rescue, the law enforcement agency that investigated the fire that destroyed a business owned by Rubesne and that ACE had insured pursuant to a business owners' policy (the "Policy").

Recall that the fire was reported to South Metro Fire Rescue on January 5, 2024, at 11:58 p.m. ECF No. 56 at 5 ¶ 5; ECF No. 56-3 (South Metro Fire Rescue Incident Report reflecting a print date of February 1, 2024). The report generated by South Metro Fire Rescue states that an "Incendiary device" was located on scene and that the "Cause of Ignition" was "Intentional." ECF No. 56-3 at 6. After obtaining South Metro's report of the incident, ACE retained a fire cause-and-origin expert from Golden Forensics, who concluded that the cause of the fire was "incendiary"—that is "[a] fire that is intentionally ignited in an area or under circumstances where and when there should not be a fire." *Id.* at 17 n.6. The cause-and-origin expert opined, "to a reasonable degree of scientific certainty," that "[t]here were multiple areas of origin on the countertop containing the cashier positions, the floor where the cashiers stood, the floor in front of the cashier positions, and in two of the aisles containing clothing," and that "[t]he cause of the fire was incendiary with a person or persons entering the front of the store, probably using a key. They then poured gasoline in these described areas and ignited them with an open flame, probably from a lighter." *Id.*

ACE retained the law firm Wells, Anderson and Race (now known as Thompson Coe) to assist ACE in its evaluation of legal issues related to Rubesne's claim under the Policy—a claim ACE ultimately denied. ECF No. 62 at 4-5 ¶¶ 9, 16. Because ACE suspected that the fire might have been caused by arson, and that it might be appropriate to bring a subrogation claim against Rubesne, ACE also retained the law firm Cozen O'Connor and National Subrogation Services ("NSS").[1] *Id.* at 4 ¶ 11. To facilitate the work of Cozen and NSS, ACE gave these entities access to its "claim file materials – including materials protected by attorney-client privilege and work product protection, and including materials protected from disclosure under the Colorado Fraudulent Claims and Arson Immunity Act," Colo. Rev. Stat. §§ 10-4-1001 *et seq.* ("AIA"). *Id.* at 5 ¶ 12. NSS, in turn, generated materials that included attorney-client privileged communications with Wells Anderson and Cozen and communications with law enforcement officials investigating the fire. *Id.* at 5 ¶ 15.

In this lawsuit, ACE has withheld on grounds of privilege and protected work product communications with the Wells Anderson and Cozen firms, including NSS file notes, and it also has claimed protection under the AIA for materials contained in its own files and those of NSS and its cause-and-origin expert. *See generally* ECF No. 62. Pursuant to an order issued on April 30, 2026, *see* ECF No. 66, this court has reviewed, *in camera*, each of the documents for which protection is claimed. Upon completion of the review of those documents and the accompanying

---

[1] On its website, Cozen O'Connor describes NSS as its "fully integrated subsidiary." *See* https://www.cozen.com/subrogation, last accessed August 29, 2026. *See Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*, 127 F.4th 178, 183-84 (10th Cir. 2025) (approving courts taking judicial notice of facts which are "public information . . . not reasonably subject to dispute").

privilege logs, the court finds that ACE has carried its burden to establish that one or more claimed privileges apply, as to every document, and that none should be produced to Rubesne.

## LEGAL STANDARD

Rule 26(b)(1) permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The party seeking production has the initial burden of showing relevance. *See Chung v. Lamb*, No. 14-cv-03244-KLM, 2017 WL 10619941, at *3 (D. Colo. Oct. 24, 2017) (citing *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 539 (D. Kan. 2006)). Relevance under Rule 26(b)(1) is "broadly construed" in relation to discovery, and a request is considered relevant "if there is 'any possibility' that the information sought may be relevant[.]" *Stanton v. Encompass Indem. Co.*, No. 12-cv-00801-PAB-KLM, 2013 WL 2423094, at *2 (D. Colo. June 4, 2013) (quoting *Cardenas v. Dorel Juv. Grp., Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005)).

On a motion to compel, the party seeking discovery bears the initial burden of establishing relevance, but when the moving party has established relevance, or the discovery appears relevant on its face, the party resisting discovery bears the burden of supporting its objections. *See generally JL v. Regis Univ.*, No. 21-cv-00580-DDD-NYW, 2022 WL 1443059, at *2 (D. Colo. May 6, 2022); *see also Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (holding that the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, Nos. 08-1250-MLB-KGG, 08-2392-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request."). The resisting party's burden is not

satisfied by merely asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004) (quotation omitted).

**ANALYSIS**

The focus of the Motion to Compel is that Rubesne should be allowed to see ACE's communications with law enforcement officials the insurer has withheld under the AIA. *See* ECF No. 57 at 10-13. At bottom, Rubesne's position is that the protections built into the AIA by the Colorado legislature may be overridden by the simple act of issuing a discovery request to an insurer in a civil case. That idea is neither supported by the plain language of the statute nor consistent with its core purpose to facilitate frank communications between insurers and law enforcement officials charged with investigating arson and arson-related insurance fraud in Colorado.

The privilege ACE invokes is set forth in § 10-4-1003, governing "[d]isclosure of information":

> (1)(a) When any person or insurer has reason to believe that a fire loss may have been caused by other than accidental means or that any insurance claim may be fraudulent, then such person may, **and such insurer shall, notify an authorized agency**.
> (b) A notification pursuant to paragraph (a) of this subsection (1) **shall be confidential, shall not constitute a public record under part 2 of article 72 of title 24, C.R.S., and shall not be discoverable or admissible in any civil action**.
>
> * * *
>
> (8)(a) Any person that has reason to believe that a fire loss may have been caused by other than accidental means, that any insurance claim or application for insurance coverage may be fraudulent, or that a fraudulent insurance act has been committed, may, and **any insurer that has reason to believe the same shall, furnish and disclose any relevant information in its possession concerning such loss, claim, or act to any insurer or authorized agency for the purpose of**

> **detecting, prosecuting, or preventing fraudulent insurance claims. Such reporting shall be confidential, shall not be a public record under article 72 of title 24, C.R.S., and shall not be discoverable or admissible under the Colorado rules of civil procedure in any civil litigation, but only to the extent that the insurer or person disclosing the information is granted immunity under section 10–4–1005**.

Colo. Rev. Stat. §§ 10-4-1003(1)(a), (b); 8(a) (emphasis added).

As these provisions state, "[t]he privilege created by section 10-4-1003 applies to a "notification" or "report" of insurance fraud made to 'an authorized agency.'" *Carbajal v. Lincoln Ben. Life Co.*, No. 06-cv-00884-EWN-BNB, 2007 WL 1964073, at *5 (D. Colo. July 2, 2007), *vacated in part on other grounds*, 2007 WL 3407345 (D. Colo. Nov. 13, 2007). Under the AIA, an 'authorized agency" includes a "fire department" like South Metro Fire Rescue, the law enforcement entity investigating the fire at issue here. *See* Colo. Rev. Stat. § 10-4-1002(1)(a).

All the withheld documents, or the redacted information in those documents, fall into one or more of the following categories: (1) a document reflecting a "notification" or "report" of insurance fraud made to South Metro Fire Rescue, "an authorized agency" under the AIA; (2) a document reflecting communications between ACE/Chubb[2] and a representative of South Metro Fire Rescue; (3) a document reflecting communications between NSS or ACE's cause-and-origin expert[3] with South Metro Fire Rescue; or (4) a document reflecting attorney-client privileged

---

[2] "Ace Property and Casualty Insurance Company was founded in 1985 as part of the ACE Group, which later became known as Chubb Limited after its acquisition in 2016." *See* https://insurasales.com/carriers/ace-proeprty-and-casualty, last accessed August 29, 2026.

[3] ACE has standing to object to the production of privileged materials that may be contained in the files of NSS, its subrogation services contractor, or Golden Forensics, the firm it retained to examine the cause and origin of the fire. *See, e.g.*, *E.E.O.C. v. Original Honeybaked Ham Co. of Ga., Inc.*, No. 11-cv-02560-MSK-MEH, 2012 WL 934312, at *2 (D. Colo. Mar. 19, 2012)

communications, some also containing protected work product, between ACE/Chubb and its counsel. ACE has met its burden to show that these documents are subject to the privilege created by § 10-4-1003, the attorney-client privilege, the work product doctrine, or some combination of these protections, and that the documents are therefore shielded from production:

| | |
|---|---|
| Documents in ACE/Chubb files reflecting communications with counsel and/or South Metro Fire Rescue regarding the fire investigation | ACE 641-652; 1064-1066; 1391-1397; 1429-1437; 1643-1646; 2171-2172; 2189; 2317-2318; 2321-2322; 2759-2761; 4001-4003; 4350-4351; 4353-4355; 4357; 4364-4368 |
| Immunity letter from South Metro Fire Rescue to Chubb directing that Chubb provide documents pursuant to Colo. Rev. Stat. § 10-4-1003 | GF 479-480 |
| Correspondence from Wells Anderson to Chubb regarding a decision on the fire claim of insured Rubesne Resources, LCC | NSS 2-34 |
| NSS claim notes dated 9/3/2024, 10/4/2024, 11/12/2024, 12/12/2024, 1/10/25 reflecting communications with counsel and/or South Metro Fire Rescue regarding the fire investigation | NSS 55-56, 58 |
| Emails reflecting communications between Chubb and South Metro Fire Rescue regarding the fire investigation | GF 687-690 |

The undersigned is respectfully unpersuaded by Rubesne's arguments that would have this court override these properly-invoked privileges, including the privilege the Colorado legislature saw fit to integrate into the structure of the AIA. In support of an exemption from that privilege, Rubesne points to § 10-4-1004 of that statute, which requires an insurer who "receives

(recognizing that "a party has no standing to quash a subpoena served on a third party, *except as to claims of privilege* or upon a showing that a privacy issue is implicated") (emphasis added).

any information furnished pursuant to this part 10 [to] hold the information in confidence . . . *until such time as its release is required pursuant to a civil* or criminal *proceeding*." Colo. Rev. Stat. 10-4-1004(1) (emphasis added); *see also* ECF No. 57 at 11 ("Arguably, [§ 10-4-1004(1)] creates a reasonable interpretation that Section 1004 is intended to modify and supersede the privileges afforded by 1003."). To the extent this statutory provision *might* authorize this court to issue an order compelling the production of AI-privileged documents—this court could locate no case interpreting that provision by a Colorado (or federal) court,[4] and the parties identify no such case—the undersigned finds that the circumstances here do not justify the issuance of such an order.

Starting, as required, with the foundational principles of statutory interpretation, the language selected by the Colorado legislature in the AIA must be approached by this court with respectful deference. *See Nat'l Ass'n for Gun Rts. v. Polis*, 173 F.4th 1317, 1325-26 (10th Cir. 2026). "Colorado courts first consider 'the statute's plain language, giving its words and phrases their plain and ordinary meanings' to determine legislative intent." *People Int. of G.S.S.*, 462 P.3d 592, 595 (Colo. 2020) (citing *People v. Iannicelli*, 449 P.3d 387, 391 (Colo. 2019)); *see also Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1235-36 (10th Cir. 2026) (recognizing that "the court's task when interpreting a statute is to give effect to the clear meaning of that statute as written," and that "Courts do so by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole") (citation modified).

As the Colorado Court of Appeals has recognized, "the Fraudulent Claims and Arson Information Reporting Act [is] a statutory framework that requires an insurer to notify certain

[4] The court conducted its research using the Westlaw research platform.

authorities when it believes a claim may be fraudulent or that the cause of a fire was arson, regulates the sharing and disclosure of such information by agencies and insurers, and provides insurers immunity from civil penalties arising from providing such information to authorities." *Phan v. Am. Fam. Ins. Co.*, No. 20CA1734, 2021 WL 12341636, at *4 (Colo. App. Nov. 24, 2021) (citing Colo. Rev. Stat. §§ 10-4-1001 to -1009)).[5] The AIA is rigorous in its requirements of insurers: they "shall" notify a law enforcement agency when they have "reason to believe" that a fire was "caused by other than accidental means or that any insurance claim may be fraudulent," *see* § 10-4-1003(1)(a), and they "shall" provide a law enforcement agency "any information in its possession concerning such loss, claim or act[.]" *Id.* § 1003(8)(a). Lest there be any confusion as to these stringent obligations, the legislature went on to say: "No person, authorized agency, or insurer shall: (a) intentionally or knowingly refuse to release any information requested pursuant to section 10-4-1003 (2); (b) intentionally or knowingly fail to provide authorized agencies with relevant information pursuant to section 10-4-1003 (1); or (c) fail to hold in confidence information required to be held in confidence pursuant to section 10-4-1004(1)." Colo. Rev. Stat. 10-4-1006 (citation modified).

Along with these non-optional duties of disclosure and confidentiality, the Colorado legislature chose to establish protections for both the insurer and the information the insurer is required to disclose. When the insurer "report[s]" such information pursuant to § 10-4-1003(8)(a), the information "shall not be discoverable or admissible under the Colorado rules of civil procedure in any civil litigation," *see* § 10-4-1003(8)(b), and the insurer "is immune from civil liability" when it acts in good faith to provide information to "[a]n agency of the federal or

[5] *Phan* did not specifically analyze § 10-4-1004(1).

any state, county, or municipal government that is involved in the detection, prosecution, or prevention of arson or insurance fraud." Colo. Rev. Stat. § 10-4-1005(2)(a).

The "plain and ordinary" meaning of this statutory language compels this court to tread carefully before construing § 10-4-1004(1) to authorize an override of the AIA's confidentiality strictures, designed to encourage the reporting of potential arson and insurance fraud, simply because a party has asked for AIA-protected materials in discovery in a civil case. Were that the meaning of § 10-4-1004(1), persons suspected of arson could gain access to AIA-protected materials generated in a pre-filing criminal investigation merely by filing a lawsuit against the insurer of their property—effectively eviscerating the confidentiality structure the legislature plainly intended to create in the AIA. Nothing in the text of the AIA countenances that tactic, and this court respectfully declines to read § 10-4-1004(1) in that expansive manner, there being no Colorado court that has done so and where such a reading contravenes the policy purposes underlying the statute. In short, this court finds no legal justification for construing Rubesne's discovery requests in this civil action as "requir[ing]" the release of information that is privileged under the AIA. *See id.*

Turning to Rubesne's other arguments for disclosure of AIA-protected materials, the court has carefully examined each argument and concludes that they do not compel a different result.

Rubesne asserts that the only communications protected by the privilege under the AIA are those sent *from* the insurer *to* the investigating law enforcement agency. *See* ECF No. 57 at 12 (arguing that "[c]ommunications beyond those initial notifications or reports of potential

fraudulent activity are not privileged").[6] This reading would render the privilege of no consequence, requiring as it would the exposure of communications from law enforcement officials as they seek to obtain, and to understand, information provided by the reporting insurer. Rubesne contends that "[t]his interpretation is consistent with the AIA's purpose of immunizing the *reporters* from liability," ECF No. 57 at 12 (emphasis added), but this court cannot agree. Were such a rule to be implemented, one can envisage the production of a redacted email chain, restricting the communications on the insurer's side but exposing the communications of law enforcement officials—and so allowing the reader to easily ascertain what the *insurer* was reporting. Thus would the "privilege" under the AIA be robbed of any efficacy. So, too, would Rubesne's construction violate the longstanding rule of statutory interpretation that a court's "primary task when interpreting a statute is to discern and effectuate the legislature's intent by construing the statute as a whole, giving consistent, harmonious, and sensible effect to all of the statute's parts." *Global Air Mobility Inc. v. Chatterton*, No. 25CA0951, 2026 WL 1616140, at *2 (Colo. App. June 4, 2026) (citation modified) (quoting *Hobbs v. City of Salida*, 576 P.3d 164, 167 (Colo. 2025)). The interpretation of the privilege Rubesne advances—which seemingly would *never* shield from production the statements of a law enforcement agency investigating arson or insurance fraud—is at odds with the goal of assuring a consistent, harmonious, and sensible reading of the AIA so as to give effect to all components of the statute. *See Colorado State Board of Medical Examiners v. Saddoris*, 825 P.2d 39, 44 (Colo. 1992) ("Statutes must be

[6] The court assumes Rubesne means the references to notifying and reporting in §§ 10-4-1003(1)(a) and (8)(a).

construed so as to effectuate their intent and *beneficial purposes*, not to defeat them.") (quotation omitted).

Rubesne next points to language in the Joint Protective Order entered in this case, which defines "confidential" information to encompass "information received in confidence from third parties, including under the Colorado Arson Immunity Act, C.R.S. §§ 10-4-1001 *et seq.*" *See* ECF No. 48 ¶ 3. While this provision would allow ACE to designate as "confidential" certain information that may have come into its possession pursuant to the AIA, the provision does *not* state that otherwise privileged information—whether the privilege is conferred by the AIA or by some other means—loses its privileged status and is perforce subject to production just because there is a protective order in place. That is not what the language in the protective order here says, and this court would not have approved the entry of a protective order imposing such a wholesale privilege waiver.

Rubesne also argues that, under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, "[p]eople accused of criminal arson are entitled to full disclosure of information obtained by law enforcement in the course of their investigation." ECF No. 64 at 5. That is so, but there is nothing in the record here to indicate that any person affiliated with Rubesne is charged with a crime. Were that to happen,[7] those documents would be provided to the accused during discovery in the criminal case. But the potential future application of *Brady* does not justify this

[7] Nothing in this Order should be read to suggest that this court has formed an opinion as to whether any individual affiliated with Rubesne engaged in arson or committed insurance fraud. These are questions the court need not—and expressly does not—decide.

court lending its imprimatur to an end-run now around the privilege the Colorado legislature chose to establish in the AIA.

Finally, Rubesne suggests that disclosure of AIA-protected documents should be allowed because no one affiliated with Rubesne has ever been charged with a crime in connection with the fire, and there is an individual who is suspected to have set fires at nearby businesses at approximately the same time as the fire that occurred on Rubesne's premises. *See* ECF No. 57 at 2. As an initial point of clarification, the court notes that there is evidence in the record showing that the individual suspected in the other fires has never been identified as a suspect in the fire on the Rubesne premises, thus distancing him from that event. *See* February 13, 2024 ACE claim file note, ECF No. 62-1 at 1 (noting that ACE's cause-and-origin expert had spoken with police, who stated that the suspect in the other fires "was captured on CCTV video inside one of the businesses, but that the expert "has *not* been told that the offender is suspected in the fire at [Rubesne's] business") (emphasis added). Regardless, Rubesne fails to explain how the existence of a possible suspect in the fire opens a path of access to documents that are otherwise shielded from disclosure under the AIA. The restrictions set forth in that statue are not discretionary; they do not open the doors of discovery to litigants who believe themselves to have been exonerated in the course of an arson or insurance fraud investigation.

In sum, for the reasons set forth above, and being further informed by its *in camera* review of the documents, the court respectfully concludes that the privilege afforded by the AIA, the attorney-client privilege, and the work product doctrine have been properly invoked as to the documents at issue here. ACE has met its burden to establish that a privilege exists to shield each document from production. It will not be required to produce those documents.

## CONCLUSION

Consistent with the foregoing analysis, Plaintiff's Opposed Motion to Compel (ECF No. 57) is respectfully **DENIED**.[8]

DATED: August 30, 2026

BY THE COURT:



Susan Prose
United States Magistrate Judge

[8] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").